**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, Slip Opinion No. 2020-Ohio-5149.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5149

THE STATE EX REL. CABLE NEWS NETWORK, INC., ET AL., APPELLANTS, *v.* BELLBROOK-SUGARCREEK LOCAL SCHOOLS ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, Slip Opinion No. 2020-Ohio-5149.]**

*Public records law—Ohio Student Privacy Act—R.C. 3319.321(B) prohibits the disclosure of public-school records pertaining to a deceased adult former student without the written consent of the adult former student, with no exception for the former student's death—Court of appeals' judgment denying requested writ of mandamus affirmed.*

(No. 2019-1433—Submitted June 3, 2020—Decided November 5, 2020.)

APPEAL from the Court of Appeals for Greene County, No. 2019CA0047, 2019-Ohio-4187.

_____

**STEWART, J.**

{¶ 1} At issue in this appeal is whether a public-school district must release records pertaining to a deceased adult former student in response to a public-records request. The Second District Court of Appeals found that R.C. 3319.321(B), a provision of the Ohio Student Privacy Act ("OSPA"), prohibits disclosure of such records without the written consent of the adult former student, with no exception for the former student's death. Because the OSPA unambiguously forbids disclosure of the requested records, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On August 4, 2019, 24-year-old Connor Betts killed nine people and injured 27 others in a mass shooting in Dayton. Police officers shot and killed Betts at the scene. Betts was a 2013 graduate of Bellbrook High School, which is part of the school district of appellee Bellbrook-Sugarcreek Local Schools (the "school district").

{¶ 3} Appellants in this case are seven local and national media organizations.[1] On August 4 and 5, 2019, each of them submitted a public-records request to the school district under R.C. 149.43. They requested school records related to Betts, including but not limited to disciplinary records. The school district denied appellants' requests, stating that the records were exempt from disclosure under R.C. 149.43(A)(1)(v), which applies to records the release of which "is prohibited by state or federal law." Specifically, the school district identified the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g ("FERPA"), and the OSPA as statutes that exempted Betts's records from disclosure under R.C. 149.43(A)(1)(v). In an e-mail addressed to multiple members

---

1. The appellants are (1) Cable News Network, Inc., (2) Cox Media Group Ohio, Inc., d.b.a. Dayton Daily News and WHIO-TV Channel 7, (3) Scripps Media, Inc., d.b.a. WCPO-TV, (4) The Cincinnati Enquirer, a Division of GP Media, Inc., (5) The New York Times Company d.b.a. The New York Times, (6) American Broadcasting Companies, Inc., d.b.a. ABC News, and (7) The Associated Press.

of the press, appellee school district superintendent Douglas A. Cozad, Ph.D., acknowledged that the federal government generally interprets FERPA rights as expiring upon a student's death but indicated that "Ohio law offers broader protections for students' records."

{¶ 4} On August 9, 2019, appellants filed an action in the Second District for a writ of mandamus against the school district and Dr. Cozad, in his official capacity as superintendent and the custodian of the records sought. Appellants alleged that they have a clear legal right to inspect Betts's records under R.C. 149.43(B) and that neither FERPA nor the OSPA prohibits the school district from releasing them.

{¶ 5} The Second District denied the writ. The court first observed that it "does not appear to be controversial or unsettled" that the OSPA prohibits the release of public-school records about adult former students without their consent. 2019-Ohio-4187, 134 N.E.3d 268, at ¶ 17. The court then rejected appellants' argument that the OSPA's privacy protections for an adult former student lapse at the former student's death. The Second District found that the OSPA unambiguously protects an adult former student's records from disclosure, with no exception for the former student's death. *See id.* at ¶ 23-25. Having found that the OSPA prohibited the school district from releasing Betts's student records, the Second District did not reach the issue of whether FERPA likewise prohibited their release. *Id.* at ¶ 30.

{¶ 6} Appellants appealed to this court as of right.

## II. ANALYSIS

{¶ 7} We review a court of appeals' judgment in a mandamus action filed there as if the action had been brought originally in this court. *State ex rel. Dynamic Industries, Inc. v. Cincinnati*, 147 Ohio St.3d 422, 2016-Ohio-7663, 66 N.E.3d 734, ¶ 7. To be entitled to a writ of mandamus, appellants must establish, by clear and convincing evidence, (1) a clear legal right to the requested relief and (2) a clear

legal duty on the part of the school district to provide it. *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. Because mandamus is the appropriate remedy to compel compliance with R.C. 149.43, appellants need not demonstrate the absence of an adequate remedy in the ordinary course of law. *State ex rel. Cincinnati Enquirer v. Pike Cty. Gen. Health Dist.*, 154 Ohio St.3d 297, 2018-Ohio-3721, 114 N.E.3d 152, ¶ 12.

{¶ 8} "We begin with the premise that 'public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people.' " *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 32, quoting *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371, 171 N.E.2d 508 (1960). Consistent with that premise, the court construes R.C. 149.43 liberally in favor of broad access and resolves any doubt in favor of disclosure. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 17. "Exceptions to disclosure under the Public Records Act [R.C. 149.43] are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23.

{¶ 9} The school district is a "public office" under R.C. 149.43(A)(1). And the parties do not dispute that the school district's records pertaining to Betts are "records" as defined by R.C. 149.011(G). The parties' dispute centers upon the applicability of R.C. 149.43(A)(1)(v), which exempts from disclosure records the release of which is prohibited by state or federal law. The Second District held that the OSPA, R.C. 3319.321, is a state law that prohibits the school district's disclosure of records pertaining to Betts, notwithstanding his death.

*A. R.C. 3319.321(B) Applies to Former Students of a Public School*

{¶ 10} R.C. 3319.321(B) states:

> No person shall release, or permit access to, personally identifiable information other than directory information concerning any student attending a public school, for purposes other than those identified in division (C), (E), (G), or (H)[2] of this section, without the written consent of the parent, guardian, or custodian of each such student who is less than eighteen years of age, or without the written consent of each such student who is eighteen years of age or older.

(Footnote added.) When applicable, R.C. 3319.321(B) creates an exception to the definition of a public record under R.C. 149.43(A)(1). *See* R.C. 149.43(A)(1)(v); *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, ¶ 15-16, 31-34. The school district and Dr. Cozad argue that the court need not go further than the plain language of R.C. 3319.321(B) to conclude that the statute applies to Betts's student records.

{¶ 11} The intent of the General Assembly "is primarily determined from the language of the statute itself." *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). And when a statute's language is unambiguous, there is no interpretation required: the court must simply apply the statute as written. *State ex rel. Ohio Presbyterian Retirement Servs., Inc. v. Indus. Comm.*, 151 Ohio St.3d 92, 2017-Ohio-7577, 86 N.E.3d 294, ¶ 19. This court will not insert language to modify an unambiguous statute under the guise of statutory interpretation. *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.*, 52 Ohio St.3d 144, 148, 556 N.E.2d 467 (1990).

{¶ 12} The Second District acknowledged, and appellants do not dispute, that R.C. 3319.321(B)'s protections apply to records pertaining to adult former

---

2. None of the purposes in R.C. 3319.321(C), (E), (G), or (H) are applicable to this case.

students of a public school. 2019-Ohio-4187, 134 N.E.3d 268, at ¶ 17. We have also implied as much. In *State ex rel. Souffrance v. Doe*, 132 Ohio St.3d 38, 2012-Ohio-1906, 968 N.E.2d 477, the appellant was denied access to student records he requested, on the basis that FERPA barred disclosure. *Id.* at ¶ 1-2. The appellant claimed the records he requested were not exempt from public-records disclosure because they related "only to persons who are no longer students." *Id.* at ¶ 2. Citing to both FERPA and R.C. 3319.321(B), we held: "[T]his claim lacks merit because the persons were students when the records were created and originally maintained." *Id.*

{¶ 13} Despite no party raising the issue here or in the Second District below, the dissent opines that we should decide this case on the basis that R.C. 3319.321(B) does not protect the student records of former students at all. Interpreting R.C. 3319.321(B) as being "written in the present tense," the dissent posits that the statute protects only the personally identifiable information of a student who is currently attending the public school from which the records are sought. Dissenting opinion at ¶ 1. The dissent's view is not an accurate interpretation of R.C. 3319.321(B). And there is good reason why.

{¶ 14} A valid interpretation of R.C. 3319.321(B) belies the significance ascribed by the dissent to the statute's use of the present-tense verb "attending." The statute prohibits a person from releasing "personally identifiable information * * * concerning any student attending a public school." This language does not mean that the student to whom the information pertains must be presently attending the public school. Rather, the "any student attending a public school" language speaks to whether the information at issue relates to a student's attendance at a public school, regardless of the student's status at the time the information is requested. In other words, the statute is concerned not with the current status of the person whose information is being requested but rather with whether the personally

identifiable information at issue relates to an individual's attendance at the public school.

{¶ 15} Bolstering this interpretation is the fact that the General Assembly enacted the OSPA to bring the state's public schools into compliance with FERPA, which grants funding only to those educational institutions that abide by FERPA's requirements for protecting the privacy of students. *See* 20 U.S.C. 1232g(b)(1); *School Choice Ohio*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, at ¶ 31. As we observed in *Souffrance*, FERPA mandates that public schools protect the records of both current and former students. 132 Ohio St.3d 38, 2012-Ohio-1906, 968 N.E.2d 477, at ¶ 2. This requirement is made explicit by FERPA's definition of student as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information," 20 U.S.C. 1232g(a)(6). Because an educational institution may maintain information on former students no longer attending the educational agency or institution, such former students fall under FERPA's protections. *See also* 34 C.F.R. 99.3 (defining student as "any individual who is or has been in attendance at an educational agency or institution and regarding whom the agency or institution maintains education records"); 73 Fed.Reg. 74806, 74811 (2008) ("It has long been the [Department of Education's] interpretation that records created or received by an educational agency or institution on a former student that are directly related to the individual's attendance as a student are not excluded from the definition of education records under FERPA * * *").

{¶ 16} The dissent would have us believe that the General Assembly intended for R.C. 3319.321(B) to fall short of FERPA requirements by limiting its application to current students. This would be a nonsensical reading of a statute specifically intended to bring Ohio into compliance with FERPA and to help ensure that Ohio schools can receive federal funds.

### B. R.C. 3319.321(B) Prohibits Disclosure

{¶ 17} We next turn to the question whether R.C. 3319.321(B) applies to the records of an adult former student who has died. In this regard, we hold that the language of R.C. 3319.321(B) is unambiguous and creates an applicable exception under R.C. 149.43(A)(1)(v), regardless whether the relevant records pertain to an adult former student who has died.

{¶ 18} R.C. 3319.321(B) generally prohibits the release of personally identifiable information concerning any student without the written consent of the student's parent, guardian, or custodian (if the student is under 18 years of age) or the student himself (if the student is over 18). And while the legislature included certain exceptions to that general prohibition (for "directory information" and disclosure for purposes identified in R.C. 3319.321(C), (E), (G), or (H)[3]), it did not enact an exception for the death of an adult former student. Therefore, under the plain language of R.C. 3319.321(B), the school district is prohibited from releasing any personally identifying information about Betts without his consent. The Second District correctly denied the writ.

### C. There is No Ambiguity to Justify Appellants' Interpretive Analysis

{¶ 19} Despite the plain language of the statute, appellants and their amici take the position that R.C. 3319.321(B) does not prohibit the release of an adult former student's records when the student has died. Their arguments focus on FERPA's protections, which are generally understood *not* to extend to the education records of deceased adults despite no express statutory language to that

---

3. R.C. 3319.321(C) allows "administrative use of public school records by a person acting exclusively in the person's capacity as an employee of a board of education or of the state or any of its political subdivisions, any court, or the federal government." R.C. 3319.321(E) allows disclosure of a student's records to a law-enforcement officer investigating a student who is or may be a missing child. R.C. 3319.321(G) allows disclosure of records requested under R.C. 2151.14 or 2151.141 concerning probation departments and persons on community control. And R.C. 3319.321(H) allows a public-school principal to report information about a student's commission of certain criminal offenses.

effect. FERPA is significant, they argue, because the OSPA was enacted to bring Ohio's public schools into compliance with it. *See School Choice Ohio*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, at ¶ 31-32; *see also* Ohio Legislative Service Commission, Summary of 1976 Enactments, January-July, at 87 (summary of Am.S.B. No. 367, 136 Ohio Laws, Part I, 318).

{¶ 20} Appellants first emphasize that FERPA and the OSPA were enacted against a backdrop of the common-law right to privacy. This is significant because under the prevailing case law at that time, a common-law cause of action for invasion of privacy lapsed with the death of the individual to whom it belonged. *See, e.g.*, *Young v. That Was The Week That Was*, 423 F.2d 265, 265-266 (6th Cir.1970) (applying Ohio law). Thus, if Congress or the General Assembly intended in FERPA or the OSPA, respectively, to extend those statutes' privacy protections beyond an individual's death, appellants argue that they would have done so expressly because to do otherwise would have been in derogation of the common law.

{¶ 21} Appellants also argue that agency interpretation of FERPA should inform our analysis. The United States Department of Education is the federal agency charged with construing FERPA. 20 U.S.C. 1232g(f) and (g). And that department's Family Policy Compliance Office has long advised that an adult student's rights under FERPA terminate at the student's death. Appellants and their amici contend that this should inform the interpretation of R.C. 3319.321(B) because the OSPA was enacted to bring Ohio law into compliance with FERPA.

{¶ 22} The factors emphasized by appellants and their amici are consistent with those that a court may consider in determining legislative intent. But inquiry into any of these factors is inappropriate absent an initial finding that the language of a statute is ambiguous. *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, ¶ 16; *see State v. Polus*, 145 Ohio St.3d 266, 2016-Ohio-655, 48 N.E.3d 553, ¶ 7.

**{¶ 23}** Appellants use interpretive guides to argue that R.C. 3319.321(B) *should* be interpreted like FERPA, such that the protections against disclosure of an adult former student's information expire at death. But appellants have not established, as a threshold matter, how R.C. 3319.321(B) is ambiguous with respect to the absence of an exception for an adult former student's death. A statute is ambiguous "only if its language is susceptible of more than one reasonable interpretation." (Emphasis omitted.) *Dunbar* at ¶ 16. Appellants posit that there is ambiguity created by the OSPA's silence on posthumous application, but they do not explain how that silence makes R.C. 3319.321(B) susceptible to more than one interpretation.

**{¶ 24}** The language of R.C. 3319.321(B) is unambiguous and is not truly susceptible to differing interpretations. The records of a person who attended a public school can be disclosed only with the consent of the student, if that student is 18 years of age or older. If that student is deceased, he is no longer available to grant consent. But R.C. 3319.321(B) provides no exception for that circumstance. If the General Assembly intended for the death of a person to alter the confidentiality of certain information, it could have expressly enacted such a rule. Indeed, in other contexts, the General Assembly has done so. *See, e.g.*, R.C. 5119.28(A)(16) (a person's mental-health records no longer considered confidential when the person has been deceased for 50 years). Interpreting R.C. 3319.321(B)'s protections to expire upon the death of an adult former student would effectively rewrite the statute under the guise of interpretation. *See Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, 29 N.E.3d 903, ¶ 23 (noting that the court must give effect to the words used in a statute, "making neither additions nor deletions from words chosen by the General Assembly"); *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 26 (declining to recognize an exception that the statutory language does not recognize).

{¶ 25} Moreover, even if we were to view R.C. 3319.321(B) through the lens of the common-law right to privacy, our interpretation would not be different. Appellants and their amici argue that applying R.C. 3319.321(B) to the records of a deceased adult former student is in derogation of the common law because a person's common-law right to privacy lapses at death. Thus, they urge that the statute's silence on posthumous application should be interpreted consistently with the common-law rule.

{¶ 26} The premise that applying R.C. 3319.321(B) to the records of a deceased adult former student is in derogation of the common law, however, is not robust. Most of the cases cited for the proposition that a person's common-law privacy rights lapse at death deal with the existence of a tort cause of action for invasion of privacy. But R.C. 3319.321(B) says nothing about and does not have an impact on a tort cause of action for invasion of privacy. The statute imposes duties of confidentiality upon persons in possession of "personally identifiable information" concerning a student (or former student) of an Ohio public school. The fact that those duties do not end upon the death of an adult student is unrelated to a common-law tort claim for invasion of privacy.

{¶ 27} Appellants also cite *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 669 N.E.2d 835 (1996), in support of their argument that the application of the OSPA to records of deceased adult former students is in derogation of the common law and should therefore be interpreted not to protect the confidentiality of information after an adult former student's death. *Schroeder* was a public-records mandamus case in which a newspaper sought to compel a county coroner to disclose records for cases in which the cause of death was suicide. *Id.* at 580. Among other justifications for confidentiality, the coroner relied upon the right to privacy as a basis for withholding the records under R.C. 149.43(A)(1). *Id.* at 582. This court rejected the coroner's justification for withholding the records and found that even if a "privacy exemption" existed that could conceivably limit

disclosure of otherwise public records, it was unclear whether the exemption would apply to the coroner's records concerning suicides. *Id.* at 583. This court therefore found that the release of the suicide-victim records was not prohibited by state or federal law and granted a writ of mandamus compelling the coroner to disclose them under R.C. 149.43. *Id.*

{¶ 28} *Schroeder* is distinguishable and does not help appellants' position. *Schroeder* supports the proposition that there is no common-law right to privacy that shields records of deceased individuals from disclosure under R.C. 149.43. But the school district and Dr. Cozad did not rely upon common-law privacy rights to withhold records pertaining to Betts. Rather, they relied on the confidentiality duties imposed *by statute* as the applicable state-law exception to disclosure. Indeed, this court signaled that it might have decided *Schroeder* differently had there been a confidentiality statute in play. *See Schroeder* at 582 (noting that "there is no legislative scheme protecting the names of suicide victims from disclosure or incorporating the personal privacy exemption adopted by other states and the federal government"). The difference in this case is that there *is* a legislative scheme protecting personally identifiable information. And there is no textual basis in that legislative scheme to conclude that the confidentiality duties imposed upon school districts expire at the death of an adult former student.

*D. R.C. 149.43(A)'s Sunset Provision*

{¶ 29} The so-called sunset provision in R.C. 149.43(A) further undercuts appellants' argument that R.C. 3319.321(B)'s silence about posthumous application somehow renders it ambiguous. The sunset provision states:

> A record that is not a public record under division (A)(1) of this section and that, under law, is permanently retained *becomes a public record on the day that is seventy-five years after the day on which the record was created*, except for any record protected by

the attorney-client privilege, a trial preparation record as defined in this section, a statement prohibiting the release of identifying information signed under section 3107.083 of the Revised Code, a denial of release form filed pursuant to section 3107.46 of the Revised Code, or any record that is exempt from release or disclosure under section 149.433 of the Revised Code.

(Emphasis added.)  R.C. 149.43(A).

{¶ 30} Thus, any record that is *not* a public record because of an applicable exception *becomes* a public record 75 years after its creation.  In other words, the exceptions in R.C. 149.43(A)(1) themselves expire for records that are permanently retained.  In this case, the school district states (and appellants do not dispute) that Ohio law generally requires student records to be maintained permanently.

{¶ 31} As we stated earlier, the fact that R.C. 3319.321(B) does not specify what happens to the confidentiality of student records upon the death of an adult former student does not render the statute ambiguous.  The existence of the sunset provision in R.C. 149.43 underscores this point.  R.C. 3319.321(B)'s silence on posthumous application means that, as an exception to the definition of a public record, it is subject to the expiration date in R.C. 149.43(A)(1).  As the Second District observed, the existence of the sunset provision in R.C. 149.43(A)(1) suggests that the General Assembly's omission of a "death exception" to the confidentiality of student records in R.C. 3319.321(B) "was not unintentional." 2019-Ohio-4187, 134 N.E.3d 268, at ¶ 25 fn. 6.

*E.  Liberal Construction of the Public Records Act Does Not Justify Adding an Exception to R.C. 3319.321(B)*

{¶ 32} Appellants and their amici also call attention to this court's liberal construction of the Public Records Act, contending that this principle should militate in favor of finding that R.C. 3319.321(B) does not shield the public-school

records of a deceased adult former student from disclosure. Indeed, this court liberally construes R.C. 149.43(A) in favor of broad access and strictly construes exceptions against the public-records custodian. *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6-7.

{¶ 33} But principles like these do not authorize a court to rewrite statutory language. *See Presbyterian Retirement Servs., Inc.*, 151 Ohio St.3d 92, 2017-Ohio-7577, 86 N.E.3d 294, at ¶ 20. Neither a liberal construction of the Public Records Act nor a strict construction of its exceptions gives license to add language to R.C. 3319.321(B), which contains no exception for a deceased adult former student. While there might be policy reasons to carve out an exception to R.C. 3319.321(B)'s protections for situations like the one before us in this case, the decision to do so is not ours to make. "Because the General Assembly is the final arbiter of public policy, judicial policy preferences may not be used to override valid legislative enactments." *State ex rel. Tritt v. State Emp. Relations Bd.*, 97 Ohio St.3d 280, 2002-Ohio-6437, 779 N.E.2d 226, ¶ 17.

## III. CONCLUSION

{¶ 34} Having found that R.C. 3319.321(B) prohibits the disclosure of the records sought by appellants, we need not reach the issue of whether FERPA likewise prohibits disclosure. The school district correctly denied appellants' public-records request under the unambiguous language of the OSPA. We therefore affirm the Second District's judgment denying the requested writ of mandamus.

Judgment affirmed.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and DONNELLY, JJ., concur.

KENNEDY, J., dissents, with an opinion.

————————————

**KENNEDY, J., dissenting.**

{¶ 35} The text of R.C. 3319.321(B) is written in the present tense and unambiguously limits the release of "personally identifiable information other than directory information concerning *any student attending a public school*" (emphasis added); it does not prohibit a public school from releasing the records of a former student who is deceased and therefore not currently "attending" that school. The majority reads the text in both the present and past tenses to pertain to both students currently attending public school and *former* students who *attended* public school. However, the General Assembly's use of the word "attending" is not susceptible to both a present- and past-tense interpretation. For this reason, the plain language of R.C. 3319.321(B) does not prohibit a school district from releasing student records pertaining to a deceased former student. Consequently, the statute does not establish an exception to the release of public records under the Public Records Act.

{¶ 36} Accordingly, I dissent and would reverse the judgment of the Second District Court of Appeals and remand this matter for that court to determine in the first instance appellee Bellbrook-Sugarcreek Local Schools' alternative argument that the Family Educational Rights and Privacy Act, 20 U.S.C. 1232g ("FERPA"), prohibits the release of records pertaining to a deceased adult former student who attended public school.

## Law and Analysis

{¶ 37} Although the appellant media organizations argue that neither the Ohio Student Privacy Act ("OSPA") nor FERPA prohibit the release of the public-school records of a student who attains 18 years of age and subsequently passes away, the court of appeals addressed only the OSPA. My analysis today is likewise limited to reviewing that statute.

### *Statutory Construction*

{¶ 38} This case presents a narrow issue regarding the meaning of R.C. 3319.321(B), returning us to a familiar place: statutory interpretation. As we

explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

*The Public Records Act*

{¶ 39} The Public Records Act requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record kept by a "public office," R.C. 149.43(A)(1), and this court has held that "school districts are public offices and the records containing students' personally identifiable information are records" subject to the public-records law. *State ex rel. School Choice Ohio, Inc. v. Cincinnati Pub. School Dist.*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, ¶ 15. R.C. 149.43(A)(1)(v), however, provides that "[r]ecords the release of which is prohibited by state or federal law" are not public records and thus not subject to release. *See School Choice Ohio* at ¶ 15.

*The Ohio Student Privacy Act*

{¶ 40} Part of the Ohio Student Privacy Act, R.C. 3319.321(B), provides that

> [n]o person shall release, or permit access to, personally identifiable information other than directory information concerning *any student attending a public school*, for purposes other than those identified in division (C), (E), (G), or (H) of this section, without the

written consent of the parent, guardian, or custodian of each such student who is less than eighteen years of age, or without the written consent of each such student who is eighteen years of age or older.

(Emphasis added.)

{¶ 41} A plain reading of the unambiguous text of the statute limits the release of records concerning any student *attending* a public school. The word "attend" means "to be present at" and "go to," *Webster's Third New International Dictionary* 140 (2002), and the word "attending" is a present participle form of that verb, *id.*; *see also Thomas v. Principal Fin. Group*, 566 So.2d 735, 739 (Ala.1990) (" 'Attending' is the present participle of 'attend' "); Bryan A. Garner, *Garner's Modern English Usage* 1020 (4th Ed.2016) (defining "present participle" as "[a] nonfinite verb form ending in *-ing* and used in verb phrases to signal the progressive aspect"); *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 336 (7th Cir.2019) (citing Garner's definition of a present participle).

{¶ 42} Use of the present participle denotes present and continuing action. *Webster's* at 1794 (explaining that a present participle "typically expresses present action in relation to the time expressed by the finite verb in its clause and * * * is used in the formation of the progressive tenses"); *see also Shell* at 336 (" 'Having' means presently and continuously. It does not include something in the past that has ended or something yet to come. To settle the technical debate, it is a present participle, used to form a progressive tense"); *Khakhn v. Holder*, 371 Fed.Appx. 933, 937 (10th Cir.2010) (explaining that by using the present participle "applying," Congress unambiguously excluded people who had already had their applications denied); *United States v. Hull*, 456 F.3d 133, 145 (3d Cir.2006) (Ackerman, J., concurring in part and dissenting in part) ("Congress's use of the present participle 'committing' connotes present, continuing action"); *Competitive Energy Servs., L.L.C. v. Pub. Util. Comm.*, 2003 Me. 12, 818 A.2d 1039, ¶ 20, fn.

10 (" 'Purchasing' is a present participle of the verb 'purchase,' indicating the present tense").

{¶ 43} The plain meaning of the phrase "any student attending a public school" refers to a person who is currently and continuously going to that school. In contrast, a person who attended school in the past cannot be said to be *attending* the school under any common usage of that word.

{¶ 44} The conclusion that R.C. 3319.321(B) applies only to students presently attending a public school is fortified by the fact that it allows a school district to release student records with "the written consent of the parent, guardian, or custodian of *each such student* who *is* less than eighteen years of age" or "the written consent of *each such student* who *is* eighteen years of age or older." (Emphasis added.) R.C. 3319.321(B). This language is also phrased in the present tense and speaks about a person who *is* a *student*. But an adult who no longer attends the public school is not a student at that school and his or her consent is not required before releasing his or her student records. That person *was* a student and now *is* a *former* student.

{¶ 45} Moreover, this court has held that the OSPA, "R.C. 3319.321, was enacted to bring the state's public schools into compliance with FERPA." *School Choice Ohio*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, at ¶ 31. FERPA defines "education records" to include "those records, files, documents, and other materials which--(i) contain information directly related to a student; and (ii) *are maintained* by an educational agency or institution or by a person acting for such agency or institution." (Emphasis added.) 20 U.S.C. 1232g(a)(4)(A). The words "are maintained" are a verb phrase in *the present tense* referring to the current state of things. Similarly, FERPA defines "student" to "include[ ] any person with respect to whom an educational agency or institution *maintains* education records or personally identifiable information, but does not include a person who has not been in attendance at such agency or institution." (Emphasis added.) 20 U.S.C.

1232g(a)(6). This language provides that a person is a student protected by FERPA if he or she has been in attendance at the school and the school continues to maintain records pertaining to him or her, and we have recognized that federal law protects the records of both current and former students, *State ex rel. Souffrance v. Doe*, 132 Ohio St.3d 38, 2012-Ohio-1906, 968 N.E.2d 477, ¶ 2.

{¶ 46} The General Assembly therefore knew how to limit access to student records that are maintained by Ohio's public schools or that pertain to a person who has been in attendance, yet it nonetheless chose to use only present-tense limiting language when enacting the release-of-records statute to those concerning "any student attending a public school."

{¶ 47} Accordingly, pursuant to its plain meaning, R.C. 3319.321(B) prohibits a public school from releasing or allowing access to a current student's personally identifiable information (other than directory information) absent the parent's or adult student's consent, but it does not prohibit a public school from releasing or allowing access to student records of a former student. A student who died cannot be said to be a "student attending" public school. And for this reason, R.C. 3319.321(B) does not bar release of the records at issue in this case.

*The Majority's Analysis*

{¶ 48} Although the majority admits that the General Assembly used the present-tense verb "attending," it suggests that it is somehow improper to apply what I view to be the plain meaning of a statute when no party has asserted it. But the meaning of a statute is a question of law that we review de novo. *See Bur. of Workers' Comp. v. Verlinger*, 153 Ohio St.3d 492, 2018-Ohio-1481, 108 N.E.3d 70, ¶ 6. Our role in exercising the judicial power granted to us by the Ohio Constitution is to interpret and apply the statute *as the General Assembly enacted it*. *See Slingluff*, 66 Ohio St. 621, 64 N.E. 574, at paragraph two of the syllabus. The parties may espouse arguments regarding the meaning of a statute, but in the end, it is the courts that have the authority and the duty to "say what the law is,"

*Marbury v. Madison*, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). This court abdicates that responsibility if it rejects out of hand a plain-meaning analysis of a statute just because a party failed to assert it.

{¶ 49} The majority also asserts that in *Souffrance*, we "implied" that R.C. 3319.321(B)'s protections apply to records pertaining to adult former students of a public school. Majority opinion at ¶ 12. A plain reading of *Souffrance*, however, reveals that that case concerned solely the question whether FERPA precluded the release of former students' records, and nothing in the per curiam opinion indicates that any party had relied on the OSPA or that the court had intended to decide its scope. It was not before the court.

{¶ 50} Further, the court in *Souffrance* referenced the OSPA only at the tail end of a string citation with a "see also" signal. That reference came behind citations to the Code of Federal Regulations and the Court of Appeals of Indiana and without any explanatory parenthetical. Even if the court intended that vague citation to constitute a decision that the OSPA protects the records of adult former students, that statement would not be binding on the court today. At best, the statement is dicta because it was unnecessary to resolving the issue before the court and therefore has "no precedential force" in a later case. *State ex rel. DiFranco v. S. Euclid*, 138 Ohio St.3d 367, 2014-Ohio-538, 7 N.E.3d 1136, ¶ 24, *superseded by statute on other grounds as stated in State ex rel. Cincinnati Enquirer v. Cincinnati*, 157 Ohio St.3d 290, 2019-Ohio-3876, 135 N.E.3d 772, ¶ 12.

{¶ 51} Nonetheless, the majority holds that

[t]he language of R.C. 3319.321(B) is unambiguous and is not truly susceptible to differing interpretations. The records of a person *who attended* a public school can be disclosed only with the consent of the student, if that student is 18 years of age or older. If that student is deceased, he is no longer available to grant consent. But R.C.

20

3319.321(B) provides no exception for that circumstance. If the General Assembly intended for the death of a person to alter the confidentiality of certain information, it could have expressly enacted such a rule. Indeed, in other contexts, the General Assembly has done so. *See, e.g.*, R.C. 5119.28(A)(16) (a person's mental-health records no longer considered confidential when the person has been deceased for 50 years). Interpreting R.C. 3319.321(B)'s protections to expire upon the death of an adult *former* student would effectively rewrite the statute under the guise of interpretation.

(Emphasis added.) Majority opinion at ¶ 24.

{¶ 52} But it is the majority that effectively rewrites the statute. It holds that R.C. 3319.321(B) protects former students who attended public school. But in order for the statute to read as the majority desires it to, words would need to be added to the statute as follows:

No person shall release, or permit access to, personally identifiable information other than directory information concerning any student attending [*or any former student who attended*] a public school * * * without the written consent of the parent, guardian, or custodian of each such student [*or former student*] who is less than eighteen years of age, or without the written consent of each such student [*or former student*] who is eighteen years of age or older.

(Brackets added.) If the General Assembly had enacted that language in R.C. 3319.321(B), I could agree with the majority's holding. However, the words "former" and "attended" do not exist in the statute that the legislature actually

enacted, and the majority therefore contravenes the fundamental precept that "a court may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation," *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 20.

{¶ 53} " 'The preeminent canon of statutory interpretation requires us to "presume that [the] legislature says in a statute what it means and means in a statute what it says there." ' " (Brackets added in *BedRoc*.) *State ex rel. Lee v. Karnes*, 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 27, quoting *BedRoc Ltd., L.L.C. v. United States*, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004), quoting *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

{¶ 54} But although the majority claims to be simply applying the plain and unambiguous language of R.C. 3319.321(B), it goes beyond the four corners of the statute to consider canons of statutory construction, which apply only when a statute is ambiguous. *See Wayt v. DHSC, L.L.C.*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92, ¶ 23.

{¶ 55} In concluding that "the 'any student attending a public school' language speaks to whether the information at issue relates to a student's attendance at a public school," majority opinion at ¶ 14—even though the phrase "relates to a student's attendance" does not appear in the statute—the majority relies on what it asserts is the object of the statute, the circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction. *See* R.C. 1.49 (setting forth canons of statutory construction). However, there would be no need to resort to these canons of construction if the majority's "interpretation" applied the plain meaning of R.C. 3319.321(B), because "[w]e do not look to the canons of statutory construction when the plain language of a statute provides the meaning." *Wayt*, 155 Ohio St.3d 401, 2018-Ohio-4822, 122 N.E.3d 92, at ¶ 23.

{¶ 56} For example, the majority asserts that "the General Assembly enacted the OSPA to bring the state's public schools into compliance with FERPA." Majority opinion at ¶ 15, citing *School Choice Ohio*, 147 Ohio St.3d 256, 2016-Ohio-5026, 63 N.E.3d 1183, at ¶ 31. But *School Choice Ohio* relied on an opinion of the attorney general, who actually opined that "R.C. 3319.321 was *apparently* passed in order to bring the state's public schools into compliance with federal law" and specifically referred to a provision of FERPA protecting the right of parents to review the education records of their children. (Emphasis added.) 1987 Ohio Atty.Gen.Ops. No. 87–037, at 2-255.

{¶ 57} In addition, *School Choice Ohio* cited to a summary of enactments prepared by the Ohio Legislative Service Commission. However, Ohio does not maintain a comprehensive legislative history of its statutes, *State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 20, and we have long recognized that "a report of the Legislative Service Commission, with respect to proposed legislation, may not be used to give a meaning to a legislative enactment other than that which is clearly expressed by the General Assembly," *Cleveland Trust Co. v. Eaton*, 21 Ohio St.2d 129, 138, 256 N.E.2d 198 (1970).

{¶ 58} The majority also applies a canon of construction in considering the consequences of a particular construction, claiming that its interpretation is needed "to help ensure that Ohio schools can receive federal funds," majority opinion at ¶ 16. But FERPA does not condition education spending on the enactment of state legislation, and giving effect to the plain language of R.C. 3319.321(B) as the General Assembly enacted it does not affect one cent of federal funding for Ohio's schools. This court has held that once a school accepts federal funds, it is prohibited from releasing student records covered by FERPA's protections during the funding period. *State ex rel. ESPN v. Ohio State Univ.*, 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 23. Student records covered by FERPA are exempted from release as public records under R.C. 149.43(A)(1)(v). *Id.* at ¶ 25.

{¶ 59} The United States Supreme Court has held that FERPA's nondisclosure provisions are enforced solely by the Secretary of Education through her distribution of federal funds. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). And as the majority acknowledges in rejecting the appellants' argument that the OSPA should be construed in accord with the secretary's interpretation of FERPA, the Department of Education does not withhold funds from schools that have a practice or policy of granting access to the school records of former students who died as adults. Despite the majority's bluster, then, this case has nothing to do with federal funding of Ohio schools but is really about whether the people of this state have a right to access public records.

{¶ 60} But even if there were a risk to federal funding, it would not grant this court super-legislative authority to substitute its judgment for that of the General Assembly and rewrite the plain language that the General Assembly enacted. It may be good policy for Ohio to prohibit access to records pertaining to both current and former students of a public school, but it is the General Assembly, not this court, that is the ultimate arbiter of public policy in this state, *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 59. Our role "in reviewing legislative enactments is limited to interpreting the meaning of statutory provisions and determining whether they are in accord with the federal and state Constitutions." *Toledo v. State*, 154 Ohio St.3d 41, 2018-Ohio-2358, 110 N.E.3d 1257, ¶ 31. Second-guessing the wisdom of the legislature's public-policy decisions does not fall within the scope of that review. *See State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 20.

{¶ 61} Because the unambiguous language of the statute as enacted by the General Assembly protects the records of "any student attending a public school," R.C. 3319.321(B), not records that "relate[ ] to a student's attendance," majority

opinion at ¶ 14, it does not extend that protection to students who are deceased or otherwise not attending a public school.

**Conclusion**

{¶ 62} R.C. 3319.321(B) does not prohibit the release of student records pertaining to the deceased former student sought in this case. Because R.C. 3319.321(B) does not apply and the court of appeals did not reach the school district's alternative argument that FERPA precludes the release of the student records, that leaves an open question whether FERPA applies, notwithstanding the secretary's interpretation of it. I therefore would reverse the judgment of the court of appeals and remand this case for that court to resolve the issue in the first instance. The majority does not. Therefore, I dissent.

_____

Faruki P.L.L., Erin E. Rhinehart, and Christopher C. Hollon, for appellants.

Subashi, Wildermuth & Justice, Nicholas E. Subashi, and Tabitha Justice, for appellees.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Mark W. Altier, Assistant Attorney General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Kris Banvard, urging reversal for amicus curiae WBNS-TV, Inc.

Baker & Hostetler, L.L.P., and Melissa D. Bertke, urging reversal for amici curiae The Reporters Committee for Freedom of the Press, The Brechner Center for Freedom of Information, The Media Institute, MPA—The Association of Magazine Media, The National Press Club, The National Press Club Journalism Institute, The National Press Photographers Association, The Ohio News Media Association, The Online News Association, Society of Professional Journalists, and Student Press Law Center.

Katie Townsend and Shannon Jankowski, urging reversal for amicus curiae The Reporters Committee for Freedom of the Press.

Frank D. LoMonte, urging reversal for amicus curiae The Brechner Center for Freedom of Information.

Covington & Burling, L.L.P, and Kurt Wimmer, urging reversal for amicus curiae The Media Institute.

Ballard Spahr, L.L.P., and Charles D. Tobin, urging reversal for amici curiae The National Press Club and The National Press Club Journalism Institute.

Mickey H. Osterreicher, urging reversal for amicus curiae National Press Photographers Association.

Davis Wright Tremaine, L.L.P., Laura R. Handman, Alison Schary, and Thomas R. Burke, urging reversal for amicus curiae Online News Association.

Baker & Hostetler, L.L.P., Bruce W. Sanford, and Mark I. Bailen, urging reversal for amicus curiae Society of Professional Journalists.

_____