[Cite as *WCPO-TV v. Ohio Dept. of Health*, 2022-Ohio-1864.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| WCPO-TV, A Division of the E.W. Scripps Company, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-277 |
| v. | | (Ct. of Cl. No. 2020-00513PQ) |
| | : | |
| Ohio Department of Health, | | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on June 2, 2022

**On brief:** *Graydon Head & Ritchey LLP, John C. Greiner, Darren W. Ford*, and *Kellie Ann Kulka*, for appellee. **Argued:** *Darren W. Ford*

**On brief:** *Isaac Wiles & Burkholder, LLC, Mark Landes, Dale D. Cook*, and *Benjamin D. Humphrey*, for appellant. **Argued:** *Dale D. Cook*

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Defendant-appellant, the Ohio Department of Health ("ODH"), appeals a judgment of the Court of Claims of Ohio that found ODH violated the Ohio Public Records Act by failing to properly respond to records requests made by plaintiff-appellee, WCPO-TV, a division of the E.W. Scripps Company. For the following reasons, we affirm that judgment in part and reverse it in part.

{¶ 2} On June 15, 2020, Paula Murphy, a WCPO reporter, requested the following information from ODH:

1) The number of COVID-19 deaths in 2020 from Residents at Burlington House and Alzheimer's Care Center on Springdale Road in Hamilton County. The Ohio Department of Health website lists 78 residents at this facility have tested positive for COVID-19. Please provide the date of death and any other information that can be publicly released about those deaths (age, race, sex, etc.).

2) The total number of COVID-19 deaths in 2020 from residents of any nursing home or long-term care facility in Hamilton, Butler, Warren and Clermont counties. I would please request the name of the facility, and the number of deaths of residents from COVID-19.

(Compl. at Attachment.)

{¶ 3} On June 16, 2020, ODH responded that:

The Ohio Department of Health is not releasing deaths at long term care facilities by facility for COVID-19 or any other cause of death. We are only reporting it at the county level. A person could be too identifiable and that information is "protected health information," as defined in section 3701.17(A)(2) of the Ohio Revised Code ("R.C.").

(Compl. at 2.)

{¶ 4} On August 20, 2020, WCPO filed a public-records-access complaint against ODH in the Court of Claims pursuant to R.C. 2743.75. After an unsuccessful mediation, ODH filed a motion to dismiss. In relevant part, ODH argued that it could not provide any records to WCPO because WCPO sought records containing "protected health information," which R.C. 3701.17(B) prohibited ODH from releasing. WCPO opposed ODH's motion to dismiss. According to WCPO, it was not seeking "protected health information" because it did not ask for ODH to release any information that could be used to identify the individuals who had died of COVID-19.

{¶ 5} In order to evaluate ODH's claimed exception to disclosure, the special master asked ODH to provide additional information pursuant to R.C. 2743.75(E)(3)(c). In relevant part, the special master requested that ODH "explain in detail whether and how providing the month of death, day of death, age at death, race, or sex, either alone or in combination, of a resident whose death resulted from COVID-19 would necessarily disclose

the identity of the former resident" of Burlington House Rehab and Alzheimer's Care Center ("Burlington").  (Feb. 16, 2021 Order at ¶ 7.)

{¶ 6}   ODH responded:

> With information that is generally available online, it is possible to identify specific individuals with limited information.  A good explanation of the potential to identify individuals and recommendations on how to manage this potential is the "Guidance on the release of information concerning deaths, epidemics, or emerging diseases," published by the Association of Health Care Journalists * * *. In the article, the authors state, *"[o]ften, releasing gender, age, and location is enough for people in the community or the media to identify the person."*
>
> For example, knowing that a 97-year-old female died in January 2021 at Sunny View Retirement Facility, an ODH staffer identified Margaret Tarter using a basic Google search.

(Emphasis sic.) (ODH's Response to the Special Master's Order Issued Feb. 16, 2021 at ¶ 7.)

{¶ 7}   On April 1, 2021, the special master issued a report and recommendation to the Court of Claims.  First, the special master recommended that the Court of Claims deny the motion to dismiss.  The special master then considered whether WCPO had established a public records violation by clear and convincing evidence.

{¶ 8}   Although ODH did not dispute that it maintained the COVID-19 death data sought in WCPO's requests, it contended that no ODH data system was capable of producing the datasets WCPO requested without additional programming.  After reviewing the ODH data systems containing COVID-19 data concerning residents of long-term care facilities, the special master concluded that ODH could produce the records requested in WCPO's first request from the data ODH maintained in the Electronic Death Registration System ("EDRS").  Thus, the special master determined, WCPO had shown by clear and convincing evidence that its first request was a proper request for reasonably identified, existing ODH records.  However, WCPO had not met that burden with regard to its second request.  Unlike the first request, the second request did not provide ODH with specific facility names or addresses, thus depriving ODH of an essential sorting term necessary for producing the requested records from EDRS.

{¶ 9} With regard to the first request, the special master then considered whether the records requested were excepted from public disclosure as "protected health records" pursuant to R.C. 3701.17. The special master concluded that ODH had not shown the clear and convincing proof required to apply R.C. 3701.17 as an exception to disclosure of the requested records.

{¶ 10} With regard to the second request, the special master found that it was an overly broad request. Additionally, the special master found that ODH neither provided WCPO with an opportunity to revise the second request nor made any effort to explain the manner in which ODH regularly maintained and accessed its COVID-19 death records.

{¶ 11} Based upon his legal conclusions and factual findings, the special master recommended that the Court of Claims order ODH to provide WCPO with a copy of the records described in the first request. The special master also recommended that the Court of Claims find that ODH violated R.C. 149.43(B)(2) by failing to provide WCPO with relevant information to revise the second request.

{¶ 12} ODH objected to the special master's report and recommendation. In a decision dated April 29, 2021, the Court of Claims overruled ODH's objections and adopted the special master's report and recommendation. The Court of Claims entered judgment on its decision the same day.

{¶ 13} ODH now appeals the Court of Claims' April 29, 2021 judgment, and it assigns the following errors:

> 1. The trial court erred in ordering the production of protected health information that is not a public record.
>
> 2. The trial court erred in holding that the ODH violated R.C. 149.43(B)(2) by failing to inform the requester of the manner in which the protected health information was maintained.

{¶ 14} By its first assignment of error, ODH argues that the Court of Claims erred in ordering it to produce records responsive to WCPO's first request. ODH contends that the records WCPO seeks contain protected health information and, thus, those records are exempt from disclosure under the Public Records Act pursuant to R.C. 3701.17.

{¶ 15} Ohio's Public Records Act requires a public office to promptly make copies of public records available to any person upon request. R.C. 149.43(B)(1). Courts construe the Public Records Act liberally in favor of broad access to public records and resolve any

doubt in favor of disclosure. *State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 8. Conversely, courts construe exceptions to disclosure strictly against the public office. *Id.* Moreover, the public office carries the burden to establish the applicably of an exemption to disclosure. *Id.* To meet its burden, the public office must prove facts establishing that the requested records fall squarely within the exemption. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 35.

{¶ 16} Whether a particular record is exempt from disclosure presents a question of law, although the application of the statutory exemption will necessarily depend on the application of facts to the record at issue. *Id.* at ¶ 37. When a party appeals a mixed question of law and fact, an appellate court will review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error. *Id.*

{¶ 17} In the case at bar, the parties neither dispute that ODH is a "public office" under R.C. 149.011(A) nor that the records sought in WCPO's first request are "records" as defined in R.C. 149.011(G). The dispute in this case centers on the applicability of R.C. 149.43(A)(1)(v), which exempts from disclosure "[r]ecords the release of which is prohibited by state or federal law." ODH argues that R.C. 3701.17(B), which prohibits the release of protected health information, exempts the COVID-19 death records that WCPO requested from disclosure.

{¶ 18} Pursuant to R.C. 3701.17(B), "[p]rotected health information reported to or obtained by the director of health, the department of health, or a board of health of a city or general health district is confidential and shall not be released without the written consent of the individual who is the subject of the information unless the information is released pursuant to division (C) of this section" or a statutory exception applies. The statute defines "protected health information" as:

> information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:
>
> (a) The information reveals the identity of the individual who is the subject of the information.

(b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

R.C. 3701.17(A)(2). "Information that is in a summary, statistical, or aggregate form and that does not identify an individual is a public record under section 149.43 of the Revised Code and, upon request, shall be released by the director." R.C. 3701.17(C).

{¶ 19} We recently considered the meaning and application of R.C. 3701.17 in *Walsh v. Ohio Dept. of Health*, 10th Dist. No. 21AP-109, 2022-Ohio-272. *See also Miller v. Ohio Dept. of Health*, 10th Dist. No. 21AP-267, 2022-Ohio-357 (following and applying *Walsh*). In *Walsh*, like in this case, a requester submitted to ODH a public records request for COVID-19 death records, which ODH denied on the basis that R.C. 3701.17(B) prohibited the release of protected health information. Initially, the requester argued that R.C. 3701.17(B) protected only information describing a *living* individual's "physical or mental status or condition, receipt of treatment or care, or purchase of health products." We, however, rejected that interpretation of R.C. 3701.17 because it required the insertion of a word—i.e., "living"—that did not appear in the text. *Walsh* at ¶ 14. Because R.C. 3701.17 uses the word "individual" without modification, the protections of R.C. 3701.17(B) apply equally to both living and dead persons.

{¶ 20} Next, we determined that a decedent's cause of death necessarily indicates that person's "past * * * physical * * * status or condition." R.C. 3701.17(A)(2). Consequently, under R.C. 3701.17(B), ODH could not disclose an identified or identifiable individual's cause of death absent written consent or the applicability of one of the statutory exceptions. *Walsh* at ¶ 15.

{¶ 21} Finally, we concluded that, even though R.C. 3705.23 permits members of the public to obtain certified death certificates that state an individual's cause of death, that information remains protected health information under R.C. 3701.17(B). We stated that, "[t]he fact that a decedent's cause of death, which qualifies as protected health information under R.C. 3701.17, may be disclosed to the public by the issuance of a certified copy of a death certificate pursuant to R.C. 3705.23, does not mean that information is not otherwise prohibited from release for the purpose of R.C. 149.43." *Walsh* at ¶ 20. After examining the relevant statutes, we found "no indication of General Assembly intent to exclude a

decedent's cause of death information from the confidentiality protection of R.C. 3701.17, except as necessary or required under that statute, or to the extent that information is obtainable pursuant to R.C. 3705.23." *Walsh* at ¶ 21.

**{¶ 22}** *Walsh* resolves two issues raised in this case in ODH's favor: (1) R.C. 3701.17(B) applies to deceased individuals, and (2) the disclosure of cause of death on a certified death certificate does not disqualify cause of death as protected health information subject to R.C. 3701.17(B). We thus turn to the sole remaining issue relevant to this assignment of error; namely, whether the information WCPO seeks in its first request could reveal the identity of the individuals who are the subject of that information.

**{¶ 23}** As we stated above, in order to constitute "protected heath information," the information must reveal the identity of the individual who is the subject of that information, or alternatively, the information must be capable of being used to reveal the identity of the individual, "either by using the information alone or with other information that is available to predictable recipients of the information." R.C. 3701.17(A)(2)(a) and (b). WCPO's first request asked ODH to provide: (1) the number of residents at Burlington who died of COVID-19 in 2020, (2) the date of each resident's death, and (3) "any other information that can be publicly released about those deaths (age, race, sex, etc.)." (Compl. at Attachment.) Because WCPO did not ask for any decedent's name, R.C. 3701.17(A)(2)(a) does not pertain to our analysis. We must consider whether the number of COVID-19 deaths at Burlington, the date of those deaths, and demographic information regarding the decedents could reveal the identity of the decedents pursuant to R.C. 3701.17(A)(2)(b).

**{¶ 24}** Our consideration requires review of the evidence ODH adduced to support the application of the protected-health-information exemption. As we explained above, ODH presented evidence that releasing a decedent's "gender, age, and location" provides enough evidence for the public to identify a decedent. (Emphasis deleted.) (ODH's Response to the Special Master's Order Issued Feb. 16, 2021 at ¶ 7.) ODH offered an example where, using an online obituary, it located a decedent with knowledge of that individual's gender, age, and date of death, as well as the name of the long-term care facility where the decedent last resided. This evidence, however, does not demonstrate that the information at the core of WCPO's request—the number of deaths at Burlington in 2020 and the date of those deaths—could reveal the identity of the decedents. According to

ODH's evidence, to be capable of identifying each individual, a member of the public would need to know the decedent's gender and age in addition to the decedent's residence at Burlington and date of death. We recognize that R.C. 3701.17(A)(2)(b) hinges the discoverability of identity on consideration of both the information disclosed *and* "other information that is available to predictable recipients of the information." But we cannot see how an unnamed decedent's gender and age would be information available to WCPO.

{¶ 25} ODH also states in its appellate brief that members of the public could identify the decedents from address records or through talking with the decedents' relatives or friends. ODH, however, offered no evidence that address records for Burlington residents exist. Additionally, ODH does not explain how members of the public would identify friends and relatives of the decedents without knowing the decedents' names.

{¶ 26} In sum, ODH did not present evidence that a member of the public could identify an individual solely with knowledge that the individual last resided at Burlington and died of COVID-19 on a particular date in 2020. Consequently, we conclude that WCPO's core request—for the number of deaths at Burlington in 2020 and the date of those deaths—does not seek protected health information. Based upon this conclusion, we must further conclude that R.C. 3701.17(B) does not prohibit the release of the core records WCPO sought in its first request. Moreover, R.C. 3701.17(C) dictates that information in an aggregate form, like the information sought here, that does not identify an individual is a public record, and must be released by ODH.

{¶ 27} The trial court, therefore, did not err in ordering ODH to provide records responsive to the first request to the extent that WCPO asked for the number of deaths at Burlington in 2020 and the date of those deaths. However, the trial court erred in also ordering ODH to provide "any other information that can be publicly released about those deaths (age, race, sex, etc.)." ODH has shown that this "other information" could be used with the core information to reveal an individual's identity, and thus, it cannot be publicly released. Accordingly, we sustain in part and overrule in part the first assignment of error.

{¶ 28} By its second assignment of error, ODH argues that the trial court erred in finding it violated R.C. 149.43(B)(2) by failing to inform WCPO of the manner in which it maintains it records so WCPO could revise its second request. We disagree.

{¶ 29} As in its first assignment of error, in its second assignment of error, ODH contends that the protected-health-information exemption applies. ODH argues that it could not violate R.C. 149.43(B)(2) because the records WCPO sought in its second request contained undisclosable protected health information, thus mooting any need for ODH to explain its recordkeeping.

{¶ 30} In its second request, WCPO requested that ODH disclose the number of residents who died of COVID-19 in 2020 in each long-term care facility in four Ohio counties. ODH has not adduced any evidence that a member of the public could identify an individual only knowing that the number of individuals who died of COVID-19 in 2020 in a particular long-term care facility. ODH, therefore, has not established that the information WCPO sought in its second request constitutes protected health information. Consequently, we reject ODH's argument that its violation of R.C. 149.43(B)(2) is moot, and we overrule the second assignment of error.

{¶ 31} For the foregoing reasons, we sustain in part and overrule in part ODH's first assignment of error, and we overrule the second assignment of error. We affirm in part and reverse in part the judgment of the Court of Claims of Ohio.

*Judgment affirmed in part, reversed in part.*

BEATTY BLUNT, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under authority of Ohio Constitution, Article IV,
Section 6(C).

NELSON, J., concurring in part and dissenting in part.

{¶ 32} Because I agree that Ohio's statutory scheme places the burden of proof on the Department of Health to show that the protected-health-information exemption applies, and because ODH did not establish (or try to establish, which conceivably and depending on the actual numbers, it might have been able to do) that release of raw death-with-Covid numbers for a particular facility as of June 15, 2020 could be used to identify individuals who died there with Covid, I concur with the majority that ODH has not met its burden to show that those figures alone are shielded from release. It seems to me, however, that the calculus changes significantly once the date of each such death is specified, and

that such information "could" on this record be used to identify particular individuals as having had Covid at the time of their demise. Given my understanding of the statutory exemption, I respectfully dissent simply to the extent that the majority upholds required disclosure of facility-specific *dates* of Covid-related 2020 deaths (information the requester sought as subsidiary to its first request for aggregate numbers by facility).

————————