**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ludlow v. Ohio Dept. of Health*, Slip Opinion No. 2024-Ohio-1399.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-1399

LUDLOW, APPELLANT, *v.* OHIO DEPARTMENT OF HEALTH, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ludlow v. Ohio Dept. of Health*, Slip Opinion No. 2024-Ohio-1399.]**

*Public Records Act—R.C. 149.43(A)(1)(v) does not require public offices to release records when release is "prohibited by state or federal law," and this exception applies to records that contain protected health information, R.C. 3701.17(B)—A decedent's name and address, when combined with information regarding his or her cause of death, falls within definition of "protected health information," R.C. 3701.17(A)(2), because the combined information reveals decedent's identity and past physical-health status— Records that contain a decedent's name and address, when combined with information regarding his or her cause of death, are exempt from disclosure under Public Records Act—Court of appeals' judgment affirmed.*

(No. 2022-1391—Submitted October 25, 2023—Decided April 17, 2024.)

APPEAL from the Court of Appeals for Franklin County,

No. 21AP-369, 2022-Ohio-3399.

_____

**FISCHER, J.**

**{¶ 1}** Ohio's Public Records Act, R.C. 149.43, does not require public offices to release records when release is "prohibited by state or federal law." R.C. 149.43(A)(1)(v). This exception applies to records that contain protected health information. R.C. 3701.17(B). A decedent's name and address, when combined with information regarding his or her cause of death, clearly falls within the unambiguous definition of "protected health information," R.C. 3701.17(A)(2), because the combined information reveals the identity of the decedent and the decedent's past physical-health status. The fact that cause-of-death information, which would include the name and address of the decedent, is obtainable in records under other statutes when certain conditions are met does not matter, because when the conditions of those statutes are not met, the information remains protected. Therefore, we affirm the judgment of the Tenth District Court of Appeals and hold that records that contain decedents' names and addresses, when combined with information regarding their causes of death, are exempt from disclosure under the Public Records Act.

**Facts and Procedural Background**

**{¶ 2}** Appellee, the Ohio Department of Health ("ODH"), uses an electronic program called the Electronic Death Registration System ("EDRS") to maintain death records in Ohio. ODH receives death-event data from funeral-home directors, coroners, and local health departments, stores that data in the EDRS, and then uses the EDRS to create and print death certificates.

**{¶ 3}** In April 2020, appellant, Randy Ludlow, a reporter for the *Columbus Dispatch*, filed a public-records request with ODH, requesting a digital spreadsheet copy of the EDRS database containing information for all death certificates delivered to ODH from March 1, 2020, through the date of the request. ODH

initially denied Ludlow's request, but in October 2020, ODH provided Ludlow with a digital spreadsheet that included decedents' sex, age, race, birth date, marital status, and date, time, place, manner, and cause of death. However, the spreadsheet did not include the names or addresses of the decedents because ODH claimed that that information was exempt from disclosure under R.C. 3701.17, which prohibits the release of "protected health information." "Protected health information" includes information that reveals or could be used to reveal the identity of an individual and describes his or her past, present, or future physical or mental-health status or condition. R.C. 3701.17(A)(2)(a) and (b).

{¶ 4} In January 2021, Ludlow submitted another request for "a copy of the [EDRS] database—in digital spreadsheet form—of all death certificates delivered to the department from March 1[,] 2020 to Jan. 26, 2021 by all local health departments in the state." Ludlow sought an updated spreadsheet to reflect death certificates that ODH had received after ODH had sent him the spreadsheet in October. He also requested the names and addresses of each decedent, which ODH again refused to provide.

{¶ 5} Ludlow then filed a public-records-access complaint against ODH in the Court of Claims under R.C. 2743.75. ODH filed a motion to dismiss the complaint, arguing that records that contain the names and addresses of decedents, when combined with information regarding cause of death, are not subject to release under the Public Records Act, because those records contain protected health information.

{¶ 6} The Court of Claims denied ODH's motion to dismiss and ordered ODH to provide the requested records. The court held that the information was not exempt from disclosure as "protected health information," because a different statute, R.C. 3705.23(A), expressly makes death certificates public information. R.C. 3705.23(A) requires the director of health to provide a certified copy of a death certificate when the request is accompanied by a signed application and payment

of a fee. The Court of Claims reasoned that if R.C. 3701.17 prohibits the release of information contained in death certificates, then ODH and local registrars violate the law each time they release an unredacted certified death certificate pursuant to R.C. 3705.23(A). Therefore, the court ordered ODH to provide Ludlow with the names and addresses that ODH had withheld.

**{¶ 7}** ODH appealed to the Tenth District, which reversed, relying on its earlier decision in *Walsh v. Ohio Dept. of Health*, 2022-Ohio-272, 183 N.E.3d 1281 (10th Dist.). In *Walsh*, the relator, Patrick Walsh, sought a writ of mandamus after ODH refused to provide its "death registry" in response to a public-records request. Walsh argued that the information in the registry is public because R.C. 3705.23(A) requires ODH and local registrars to issue certified death certificates when an applicant submits an application and pays a fee. The trial court dismissed Walsh's claim, and the Tenth District affirmed, holding that a decedent's cause of death is protected health information because it necessarily indicates that individual's past physical-health status or condition. *Walsh* at ¶ 15. The court of appeals held that nothing in R.C. 3701.17(B) limits its application to living individuals. *Id.* at ¶ 14. The court of appeals further noted that "while it may be true that the information in certified death certificates [may be] released [under R.C. 3705.23(A)], its initial release is conditioned on the applicant complying with the statutorily mandated procedure for obtaining the copy and the copy being duly certified at issuance." *Id.* at ¶ 20. The Tenth District therefore held, "The fact that a decedent's cause of death, which qualifies as protected health information under R.C. 3701.17, may be disclosed to the public by the issuance of a certified copy of a death certificate pursuant to R.C. 3705.23, does not mean that information is not otherwise prohibited from release for the purpose of [the Public Records Act]." *Id.*

**{¶ 8}** Relying on *Walsh*, the Tenth District here held that the names and addresses of the decedents, when coupled with their causes of death, were properly withheld as protected health information because the combined information would

4

reveal the decedents' past physical-health status or condition and the identity of the decedents. 2022-Ohio-3399, ¶ 18-21.

{¶ 9} Ludlow appealed, and this court agreed to review his single proposition of law, which says: "Information contained in an Ohio death certificate, and specifically cause of death information of a decedent, is not 'protected health information' within the meaning of R.C. 3701.17(A)(2) so as to make such information exempt from disclosure under state law for purposes of the Ohio Public Records Act, R.C. 149.43." *See* 169 Ohio St.3d 1423, 2023-Ohio-212, 201 N.E.3d 909.

**Standard of Review**

{¶ 10} Ludlow's proposition of law raises a pure question of law that requires statutory interpretation. We review pure questions of law and interpret statutes de novo. *See State v. Ashcraft*, 171 Ohio St.3d 747, 2022-Ohio-4611, 220 N.E.3d 749, ¶ 7; *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 11.

**Analysis**

{¶ 11} Ohio's Public Records Act requires public offices within the state of Ohio to make copies of public records available to any person upon request within a reasonable time. R.C. 149.43(B)(1). However, the statute also includes many exceptions to the definition of a public record, including an exception for "[r]ecords the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). ODH argues that protected health information is exempt from disclosure in records under the Public Records Act because the release of protected health information is prohibited by state law under another statute, R.C. 3701.17.

{¶ 12} R.C. 3701.17(B) states that protected health information reported to or obtained by ODH "is confidential and shall not be released without the written consent of the individual who is the subject of the information." "Protected health information" is defined as

information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:

(a) The information reveals the identity of the individual who is the subject of the information.

(b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

R.C. 3701.17(A)(2).

{¶ 13} Ludlow argues that this case is about whether cause-of-death information is protected health information, but ODH included cause-of-death information in the spreadsheet it provided to Ludlow. ODH withheld only the names and addresses of the decedents. Therefore, the real issue in this case is whether the names and addresses of the decedents, when combined with information regarding their causes of death, are protected health information under R.C. 3701.17. Based on the plain, unambiguous language of the statute, they are.

{¶ 14} Generally, cause-of-death information will reveal a person's past physical-health status or condition because the information reveals what the person may have been suffering from when he or she died. Therefore, the name and address of a decedent, when combined with his or her cause of death, is "information * * * that describes an individual's past * * * physical or mental health status or condition" and that "reveals the identity of the individual who is the subject of the information," R.C. 3701.17(A)(2)(a). The combined information is

6

protected health information that is confidential and not subject to disclosure under R.C. 3701.17(B) and 149.43(A)(1)(v).

{¶ 15} Furthermore, R.C. 3701.17(C) specifies: "Information that does not identify an individual is not protected health information and may be released in summary, statistical, or aggregate form. Information that is in a summary, statistical, or aggregate form and that does not identify an individual is a public record under section 149.43 of the Revised Code and, upon request, shall be released by the director." R.C. 3701.17(C) clarifies that a spreadsheet is a public record *only* if the information in the spreadsheet does not identify any individual person. This case involves a spreadsheet that ODH compiled in response to Ludlow's public-records request. That spreadsheet includes information that is in a summary, statistical, or aggregate form. If ODH were to include decedents' names and addresses in that spreadsheet, then under R.C. 3701.17(C), the spreadsheet would identify individuals and would not be considered a public record. Therefore, the causes of death, as released by ODH to Ludlow, are public records, but the names and addresses of the decedents, which would identify those decedents, are not.

{¶ 16} Ludlow argues that R.C. 3701.17(B) unambiguously limits its application to information concerning living individuals, because protected health information may be released only with the written consent of the individual who is the subject of the information and a deceased individual cannot give his or her consent. However, we see no reason to limit the definition of "individual" to "living individual" when the statute does not make that distinction. And despite the dissenting opinion's insistence that R.C. 3701.17 applies only to an individual who " 'breathes or has a beating heart,' " dissenting opinion, ¶ 38, quoting 1 U.S.C. 8(b), the United States Code's definition of "individual" has absolutely no application to this case, nor does that definition say what the dissenting opinion says that it does. 1 U.S.C. 8(a) defines "individual" to include "every infant

member of the species homo sapiens who is born alive." 1 U.S.C. 8(b) then defines "born alive" as one who "breathes or has a beating heart" at the time of birth. In no way does that federal statute limit the definition of individual to individuals who are currently living. Instead, it limits the definition of individual to individuals who were *living at one time*, as we do here.

{¶ 17} Furthermore, just because a deceased individual cannot give consent for ODH to release his or her information does not mean that the statute does not apply to him or her. In fact, this court has already held that a written-consent exception to a privacy statute does not mean that the privacy protections expire upon death. In *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, 170 N.E.3d 748, the issue was whether a public-school district must release records pertaining to a deceased adult former student in response to a public-records request. This court held that R.C. 3319.321(B), a provision of the Ohio Student Privacy Act, prohibits disclosure of such records without the written consent of the adult former student, with no exception for when the adult former student is deceased. *Cable News Network* at ¶ 17-18. This court noted that if the student is deceased, then he is no longer available to grant consent, but we found that the statute nevertheless applied to protect his records from disclosure. *Id.* at ¶ 24. The same holds true in this case.

{¶ 18} The dissenting opinion attempts to distinguish *Cable News Network* by arguing that the records at issue in that case were not public records "at the outset." Dissenting opinion at ¶ 43. To the contrary, *Cable News Network* and this case both involve public-records requests for records that would be considered public records "at the outset" under R.C. 149.43(A)(1) were it not for that statute's clear exception for "[r]ecords the release of which is prohibited by state or federal law," R.C. 149.43(A)(1)(v). The application of that exception is the issue in both cases. And like in *Cable News Network*, we hold that just because R.C. 3701.17(B) allows an individual to grant permission for the release of his or her protected health

information, it does not mean that the protection of that information ceases upon the individual's death.

{¶ 19} Additionally, it matters not that the records at issue in this case were created upon the individuals' deaths rather than during their lifetimes, because R.C. 3701.17 applies to both living and deceased individuals and protects past health information. The dissenting opinion argues that by protecting the information, ODH would be inserting itself into a "position of denying consent [under R.C. 3701.17(B)] on behalf of a deceased individual." Dissenting opinion at ¶ 44. But R.C. 3701.17(B) states that protected health information must be withheld *unless* the individual has provided written consent. Therefore, ODH is not denying consent on behalf of a deceased individual. Instead, ODH is following the statutory mandate of withholding protected health information when the exception of written consent has not been met.

{¶ 20} Ludlow also argues that R.C. 3701.17(B) does not apply to deceased individuals because the statute protects information that describes an individual's past, present, or future physical or mental-health status or condition, but a deceased individual does not have a present or future physical or mental-health status or condition. But again, Ludlow's argument ignores the fact that the statute also explicitly protects *past* health information. The statute does not apply only to individuals to whom the *entire* statute can be applied; the fact that the entire statute does not apply to certain individuals does not mean that the statute does not apply to those individuals at all. For example, newborn babies will not have past health information, but clearly that does not mean that the statute does not apply to their health records, which describe their present physical condition.

{¶ 21} Ludlow argues that the death-certificate information is not confidential because the information is subject to disclosure in records under other statutes. But the fact that the information is subject to disclosure in records under other statutes when certain conditions are met does not mean that the information

is subject to disclosure under the Public Records Act. For example, R.C. 3705.231 requires local registrars to allow individuals to photograph or copy death records, but it does not require ODH to make all death records across the state available for public inspection upon demand.

{¶ 22} And R.C. 313.10(A)(1) declares that "detailed descriptions of the observations written during the progress of an autopsy and the conclusions drawn from those observations filed in the office of the coroner" are public records. But far from requiring ODH to make all death records available for public inspection, that statute states: "The coroner of the county where the death was pronounced shall be responsible for the release of all public records relating to that death." This provision refutes Ludlow's argument that R.C. 313.10 expresses the General Assembly's intent to make death records held by ODH public.

{¶ 23} Finally, Ludlow points to R.C. 3705.23, which allows anyone to obtain a certified copy of a death certificate by submitting a signed application and paying a fee. But that statute allows the requester to receive a certified copy of a death certificate *only* upon payment of a fee of $21.50 and submission of an application that includes the decedent's name, date of birth, place of death, date of death, father's full name, and mother's full name. *See* R.C. 3705.23(A); Ohio Adm.Code 3701-5-03; R.C. 3705.24(B); R.C. 3705.242(A)(1); R.C. 3109.14(B)(1); Ohio Adm.Code 3701-5-02(A)(20) and Appendix T. Therefore, a requester under R.C. 3705.23 will necessarily already have the identifying information of the person whose death certificate they seek. The availability of cause-of-death information via that statute does not imply that the public may obtain bulk cause-of-death information with names and addresses of decedents through the Public Records Act. In fact, allowing the public to obtain death-certificate information in that way would greatly expand access to death certificates beyond what is available under R.C. 3705.23 and would render R.C. 3705.23 nearly obsolete because few people would submit an application or pay the fee to obtain a

death certificate if they could instead obtain that information for free by making a public-records request. The availability of cause-of-death information under other statutes does not imply that the public may obtain bulk cause-of-death information with names and addresses of decedents through the Public Records Act.

## Conclusion

{¶ 24} The name and address of a decedent, when combined with information regarding his or her cause of death, are protected health information under R.C. 3701.17 that are not subject to disclosure under the Public Records Act. Although that information may be obtainable under other statutes, those statutes require the requester to satisfy certain requirements before they may receive the information requested. Those statutes say nothing about requiring ODH to release identifying cause-of-death information en masse when someone files a public-records request. Accordingly, we affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

KENNEDY, C.J., and DEWINE, STEWART, and DETERS, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by DONNELLY, J.

_____

**BRUNNER, J., dissenting.**

## I. INTRODUCTION

{¶ 25} When a newspaper reporter, appellant, Randy Ludlow, sought a copy of appellee Ohio Department of Health's death-certificate database for a certain period during the years of 2020 and 2021, the department disclosed the database but did not include the names or addresses of the deceased persons whose death certificates were filed during that period. The majority opinion upholds this limited disclosure, viewing the database with the names and addresses as containing "protected health information" under R.C. 3701.17 and therefore exempt from disclosure under R.C. 149.43(A)(1)(v) for revealing the identities and past

physical-health statuses of deceased individuals.  I respectfully disagree and therefore dissent.

## II.  FACTS AND PROCEDURAL HISTORY

{¶ 26} The statement of facts and procedural history set forth in the majority opinion need no additional explanation, and I rely on them as stated by the majority.

## III.  DISCUSSION

### A.  Public-Records Standards

{¶ 27} The fundamental policy of Ohio's Public Records Act, R.C. 149.43, is to promote open government, not to restrict it.  In *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 27-28, we stated:

> If a public office or person responsible for public records withholds a record on the basis of a statutory exception, the "burden of production" is on the public office or records custodian to plead and prove facts clearly establishing the applicability of the exemption.  * * *  [E]xceptions to disclosure under the Public Records Act, R.C. 149.43, "are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception[]" * * * "[and must prove] that the requested records fall squarely within the exception."  [*State ex rel. Cincinnati Enquirer v. Jones-Kelly*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.]  * * *
>
> * * * [U]nlike a party requesting disclosure, the custodian of the record has knowledge of the contents of the record.  * * *.  * * * [R]equiring the government to have the burden of proof is also consistent with this court's strict construction of the exceptions of R.C. 149.43 and resolution of doubt in favor of disclosure.

*See State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, 170 N.E.3d 748, ¶ 8; *State ex rel. The Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 171, 680 N.E.2d 956 (1997); *see also* R.C. 149.43(B)(1) through (4) (requiring a response to any public-records request, requiring an explanation for any denial of a request or redaction of public records, and forbidding conditioning release of public records on the identity of the requester or the purpose of the request).

## B.  The Records Sought Were Public Records

{¶ 28} Ohio's Public Records Act provides that "[u]pon request by any person * * *, all public records responsive to the request shall be promptly prepared and made available."  R.C. 149.43(B)(1).  Ohio law defines "public office" to include "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."  R.C. 149.011(A).  It is undisputed that under this definition, the Ohio Department of Health is a "public office" for purposes of R.C. 149.43.

{¶ 29} R.C. 149.011(G) defines "records" as including "any document, device, or item, regardless of physical form or characteristic, including an electronic record * * *, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."  The Public Records Act specifically defines a "*public record*" as a "record[] kept by any public office."  (Emphasis added.)  R.C. 149.43(A)(1).  Under that definition, the requested death-certificate database is a public record because it is kept by the department.

## C. The Database Sought Does Not Squarely Fall Within an Exception to Disclosure

{¶ 30} R.C. 149.43 also provides a list of items that are not considered public records and cannot be released under the Public Records Act. *See* R.C. 149.43(A)(1)(a) through (ss). As relevant to this case, R.C. 149.43(A)(1)(v) does not require public offices to disclose "[r]ecords the release of which is prohibited by state or federal law."

{¶ 31} Here, Ludlow requested a copy of the database containing all death certificates delivered to the Ohio Department of Health from March 1, 2020, to January 26, 2021, by all local health departments in the state. The parties appear to agree that the database is a public record, but the parties disagree about what information from the database is exempt from disclosure. Ludlow's public-records request sought the release of the names and addresses of the deceased individuals in the Ohio Department of Health's death-certificate database. The Ohio Department of Health refused to provide the names and addresses on the ground that releasing that information would violate Ohio's health privacy law, R.C. 3701.17. The majority now endorses that view. I disagree.

{¶ 32} Under R.C. 3701.17, "protected health information" is defined as

> information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:
>
> (a) The information reveals the identity of the individual who is the subject of the information.
>
> (b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using

> the information alone or with other information that is available to predictable recipients of the information.

R.C. 3701.17(A)(2). R.C. 3701.17(B) provides that "[p]rotected health information reported to or obtained by the director of health [or] the department of health * * * is confidential and shall not be released without the written consent of the individual who is the subject of the information," subject to certain exceptions not applicable in this case. However, "[i]nformation that does not identify an individual is not protected health information and may be released in summary, statistical, or aggregate form." R.C. 3701.17(C).

{¶ 33} I would hold that the information in the Ohio Department of Health's death-certificate database is not "protected health information," even when it identifies deceased individuals. My reasoning is fourfold: (1) a death certificate is a public record; (2) a death certificate is created only after an individual has ceased to breathe or have a heartbeat; (3) R.C. 3701.17 does not contain an exception for death records per se; and (4) even if R.C. 3701.17 could be applied, there would not be uniform application to the entire database.

### 1. Death Certificates Are Public Records

{¶ 34} There is no legislative uncertainty that death certificates, even when they reveal the names and other identifying information of deceased individuals, are public records that are open to public access. R.C. 3705.231 provides that "[a] local registrar shall allow an individual to photograph or otherwise copy a birth or death record." In short, under R.C. 3705.231, all that is needed to access and copy a death record that presumably contains information regarding the deceased individual's name, address, and cause of death—information that the majority opinion asserts is protected health information—is to *ask* and it *shall be* permitted.

{¶ 35} If an official copy of the death record is requested, R.C. 3705.23(A)(1) provides that "the director of health, the state registrar, or a local

15

registrar, on receipt of a signed application and * * * fee * * *, shall issue a certified copy of a vital record, or of a part of a vital record, in the director's or registrar's custody to any applicant, unless the vital record has ceased to be a public record pursuant to section 3705.09, 3705.11, 3705.12, 3705.121, 3705.122, 3705.123, 3705.124, or 3705.15 of the Revised Code." No section of Chapter 3701 of the Revised Code appears in the list of public-records exceptions set forth in R.C. 3705.23(A). Rather, the listed exceptions pertain to substitute birth records, foundling records, and adoption records. *See* R.C. 3705.09(G) (the original birth record of a child is not a public record after a new birth record is issued following the paternity of that child being established); R.C. 3705.11 (a foundling report is not a public record when a foundling child is identified and an original birth record for that child is found or obtained); R.C. 3705.12 (the original birth record of a child is not a public record after a new birth record is issued following the adoption of that child); R.C. 3705.121 (the contents of the adoption file of a child adopted in another state are not a public record); R.C. 3705.122(B) (the contents of the adoption file of a child born in a foreign country are not a public record); R.C. 3705.123 (the contents of certain adoption files are not a public record); R.C. 3705.124 (the contents of certain adoption files are not a public record after a new birth record is issued in relation to an adoption); R.C. 3705.15(D)(1) (the original birth record of a person is not a public record after a new corrected birth record is issued for that person).

{¶ 36} It is clear that in accordance with Chapter 3705 of the Revised Code, the General Assembly has decided that death certificates are public records with few limitations or impediments to disclosure. None of those limitations expressly reference or include "protected health information" as defined in R.C. 3701.17. Using R.C. 3701.17 to create restrictions on the disclosure of death records, as the majority has done, is legislative in nature.

> Our duty in construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. * * * Further, as we explained in *Symmes Twp. Bd. of Trustees v. Smyth*, "[w]hen the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears*[ *v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944),] paragraph five of the syllabus.

(First and second sets of brackets sic.) *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 14. Applying R.C. 3701.17 as an exception to disclosure also unnecessarily sets up conflict between various existing sections of the Revised Code—namely, R.C. 3701.17 with R.C. 3705.23 and 3705.231. We should not interpret or apply a statute to obfuscate its meaning or application, especially when its plain meaning suffices. *See, e.g.*, *Taylor v. First Resolution Invest. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573, ¶ 140 (O'Connor, C.J., dissenting) ("The majority * * * meanders through a muddied analysis that obfuscates the law for debtor and creditor alike so that it can hold that Delaware's statute of limitations applies * * * [and] reaches the outcome desired by both it and the decedent's estate * * *").

{¶ 37} Nothing the General Assembly has done to create exceptions to the general principle that death certificates are public records suggests that the definition of "protected health information" under R.C. 3701.17 restricts disclosure of information contained in death certificates. Interpreting R.C. 3701.17 as a

restriction on the disclosure of information contained in death certificates, as the majority does, unnecessarily and inaccurately interprets R.C. 3701.17, 3705.23, and 3705.231 beyond their plain meanings. This is not our role as the judiciary, and changing the meaning of a law causes us to join the ranks of legislative lawmakers, outside of our judicial powers.

## 2. Deceased Individuals Are Not "Individuals" Within the Meaning of R.C. 3701.17

{¶ 38} The "person" that the majority and R.C. 3701.17 seek to protect is the "individual." The Revised Code does not define "individual," but it does include "individual" within the definition of "person" in R.C. 1.59(C). The United States Code, however, does define "individual." An individual is defined by federal law as being "of the species homo sapiens who is born alive at any stage of development," 1 U.S.C. 8(a), and as one who "breathes or has a beating heart," 1 U.S.C. 8(b). While the federal definition of "individual" is only directly applicable when "determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States," 1 U.S.C. 8(a), it is nevertheless persuasive. And while the majority focuses on the fact that "1 U.S.C. 8(a) defines 'individual' to include 'every infant member of the species homo sapiens who is born alive,' " majority opinion, ¶ 16, the majority should be focusing on the fact that there exists in law— federal law—a definition of the word, "individual," that is instructive. The majority argues that "[i]n no way does that federal statute limit the definition of individual to individuals who are currently living" but that the statute "[i]nstead * * * limits the definition of individual to individuals who were *living at one time*." (Emphasis sic.) *Id.* But this argument still ignores what an individual is, whether federally defined or not. This court has also recognized a "natural person" in the context of "undefined words in the Constitution [and] their common, everyday meaning, often relying on dictionary definitions," as including " '[t]he living body of a human

18

being,' " *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, ¶ 24, quoting *Black's Law Dictionary* 1378 (11th Ed.2019), and a "person" as including " 'an individual human being,' " *id.*, quoting *Webster's Third New International Dictionary* 1686 (2002).

{¶ 39} R.C. 3701.17 protects "health information" of an "individual." As explained, a deceased person is not an individual, because a deceased person does not breathe or have a beating heart. *See* 1 U.S.C. 8(a) and (b). Moreover, a deceased person is not an individual or a person with a living body. *See Knab* at ¶ 24.

{¶ 40} R.C. 3701.17(A)(2) concerns "protected health information" and provides that such information is protected if it identifies or could be used to identify an individual and "describes an individual's past, present, or future physical or mental health status or condition." R.C. 3701.17(A)(2)(a) and (b). The statute does not specify that the information remains eternally protected, even after death has occurred and the individual has ceased to be an individual with health considerations. The absence of such language in the statute is meaningful because, in other contexts and circumstances, the General Assembly *has* taken steps to protect information of deceased individuals. *See, e.g.*, R.C. 3701.9310(A) (providing that information and records collected for use and maintained by the Ohio violent death reporting system are not public records); R.C. 3705.23(A)(5) ("For the first five years after a decedent's death, a decedent's social security number shall not be included on a certified copy of the decedent's death certificate * * *"). The General Assembly could have stated something similar in R.C. 3701.17 had it wanted to.

{¶ 41} An individual is no longer an individual after death, because an individual must be breathing and have a heartbeat. Further, death certificates, whether singly or in a database format, are generated *after* an individual dies. While living persons are individuals who have "physical or mental health status[es]

or condition[s]," R.C. 3701.17(A)(2), at the time their death certificates are created, there are no health considerations at stake to be protected, because the former individual has ceased to be alive.

### 3. *Applying R.C. 3701.17 to Deceased Persons Renders Portions of the Statute Inapposite*

**{¶ 42}** Were we to apply R.C. 3701.17 to records created after the death of an individual, there would be no means to effectuate the provision giving a former individual a choice over the disclosure of those records. *See* R.C. 3701.17(B). Even under Ohio statutes for durable power of attorney for health care, the term "person" has the same meaning as in R.C. 1.59(C), which refers to "an individual"—that is, a flesh-and-blood person. *See* R.C. 1337.11(W). Thus, once a person is no longer a living individual, there is no basis for making health-care decisions. In this context, it is clear that R.C. 3701.17(B) does not operate to prevent disclosure of information contained in the death-certificate database. Stated another way, if the General Assembly had contemplated applying R.C. 3701.17 to records created after death, it could have—and certainly would have— specified the ability of the deceased individual's next-of-kin to consent or refuse to consent to the release of those records. But it did not. And until the recent group of 2022 Tenth District cases arose concerning this subject giving rise to this appeal, *see Walsh v. Ohio Dept. of Health*, 2022-Ohio-272, 183 N.E.3d 1281 (10th Dist.); *Miller v. Ohio Dept. of Health*, 10th Dist. Franklin No. 21AP-267, 2022-Ohio-357; *WCPO-TV v. Ohio Dept. of Health*, 2022-Ohio-1864, 189 N.E.3d 1287 (10th Dist.); *Knapp v. Ohio Dept. of Health*, 2022-Ohio-3401, 195 N.E.3d 1131 (10th Dist.), no caselaw operated to apply R.C. 3701.17 to death records. Contrary to the recent decisions of the Tenth District and to the opinion of the majority, I would conclude that the legislature did not envision death records—created after death and as a means to document deaths—to hold exempt "protected health information" under R.C. 3701.17.

**{¶ 43}** The majority opinion relies on this court's holding in *Cable News Network*, 163 Ohio St.3d 314, 2020-Ohio-5149, 170 N.E.3d 748, for its conclusion. That case involved the application of R.C. 3319.321(B), which addresses records that are not public records in the first instance. R.C. 3319.321(B) imposes duties of confidentiality on persons in possession of personally identifiable information concerning a student of an Ohio public school. *Cable News Network* at ¶ 26. In *Cable News Network*, this court considered whether the records of an adult former student may be released if the student is deceased and unable to grant consent. *Id.* at ¶ 1, 17, 24. We explained:

> The records of a person who attended a public school can be disclosed only with the consent of the student, if that student is 18 years of age or older. If that student is deceased, he is no longer available to grant consent. But R.C. 3319.321(B) provides no exception for that circumstance. If the General Assembly intended for the death of a person to alter the confidentiality of certain information, it could have expressly enacted such a rule. Indeed, in other contexts, the General Assembly has done so. *See, e.g.*, R.C. 5119.28(A)(16) (a person's mental-health records are no longer considered confidential when the person has been deceased for 50 years). Interpreting R.C. 3319.321(B)'s protections to expire upon the death of an adult former student would effectively rewrite the statute under the guise of interpretation.

*Cable News Network* at ¶ 24. Unlike the student records at issue in *Cable News Network*, which were created when the student was a minor, was alive, and held privacy rights that could be protected or waived, *see id.* at ¶ 3, citing 20 U.S.C. 1232g and R.C. 3319.321(B), death records are at the outset defined as public

records, *see* R.C. 149.43(A)(1) and (B)(1); R.C. 149.011(A) and (G); R.C. 3705.231; R.C. 3705.23. Exemptions to statutorily required disclosure of public records must be proved by the record keeper with evidence that clearly establish the applicability of the exemption, *Welsh-Huggins*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, at ¶ 27-28. This case is different from *Cable News Network* because a death certificate is created after death, when health care ceases and when the ability to consent, even through a durable power of attorney for health care under R.C. 1337.12, ceases. R.C. 1337.12. "Protected health information" expires for individuals under R.C. 3701.17 when they die, except for specific statutory exceptions such as the Ohio violent death reporting system under R.C. 3701.9310, which has not been raised in this case.

### 4. There Is No Evidence That a Death-Certificate Database Would Universally Reveal Past Health Information

{¶ 44} Finally, assuming arguendo that R.C. 3701.17 *could* apply to Ludlow's public-records request, the statute would not apply universally. A death certificate that is issued without a coroner having conducted an autopsy or investigation of the death may not have the same specificity or description of the cause of death as a death certificate that is issued when a coroner does conduct an autopsy or an investigation. And while a death certificate might provide information concerning a former individual's "past * * * physical or mental health status or condition," as set forth in R.C. 3701.17(A)(2), such as information regarding a diagnosed illness, listed physical causes of death might not reflect the proximate cause of the individual's death, such as being struck by lightning or falling off a roof. Death certificates that merely certify in accordance with R.C. 3705.16(C) that a person's death occurred under natural circumstances would contain even less information. How then does one decide whether there is consent to the release of the protected health information? If someone who is next-of-kin or a designated person had the authority to deny access, R.C. 3701.17(B) would

specify that authority, but it does not. The department cannot insert itself into this position of denying consent on behalf of a deceased individual by proffering an exemption based on unattainable facts; any doubts about the applicability of an exemption to disclosure must be resolved in favor of access to the records. *Cable News Network* at ¶ 8. That the database *may* or *could* reveal past health information for all or some former individuals, is not sufficient evidence to support an exemption to the public-records law, which specifically defines death certificates as public records. A blanket refusal to provide access to an entire existing database of death certificates should not be sustained.

## IV. CONCLUSION

{¶ 45} The law is clear: death-certificate records do not fall within the ambit of protected health information. Deceased individuals no longer have health information. Living individuals have the right to the protection of their health information, but former individuals do not. R.C. Chapter 3705 does not protect health information for individuals who are no longer living, except for those whose names appear in the Ohio violent death reporting system. Interpreting R.C. 3701.17 in the manner that the majority does is an unnecessary and unwarranted legislative interpretation that does not need to happen. In practice, it creates a conflict with R.C. 3705.23 and R.C. 3705.231, and it is an interpretation that should be avoided.

{¶ 46} I respectfully dissent.

DONNELLY, J., concurs in the foregoing opinion.

———————————

Faruki, P.L.L., John C. Greiner, and Darren W. Ford, for appellant.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, Stephen P. Carney, Deputy Solicitor General, and Theresa R. Dirisamer, Assistant Attorney General, for appellee.

———————————